UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| TIMOTHY E. DENNISON, )<br>)<br>Petitioner, )<br>)<br>v. )<br>)<br>SUPERINTENDENT, INDIANA )<br>STATE PRISON, )<br>)<br>Respondent. ) | CAUSE NO. 3:10-CV-457 WL |

**OPINION AND ORDER**

Petitioner Timothy Dennison filed a petition for writ of habeas corpus under 28 U.S.C. § 2254 challenging his 2003 Delaware County convictions for murder, reckless homicide, and obstruction of justice, for which he received an aggregate sentence of sixty-six and a half years. The Indiana Court of Appeals affirmed Dennison's convictions on direct appeal, and the Indiana Supreme Court declined to accept his petition to transfer. Dennison filed a petition for post-conviction relief, which the trial court denied. The Indiana Court of Appeals affirmed the trial court's denial of post-conviction relief, and the Indiana Supreme Court denied transfer.

In reviewing a petition for federal collateral relief from a state court judgment of conviction, this court must presume as correct the facts as found by the state courts. 28 U.S.C. § 2254(e)(1); *Sumner v. Mata*, 449 U.S. 539, 547 (1981). A habeas petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). As stated by the Indiana Court of Appeals in Dennison's post-conviction appeal, the facts related to his conviction are as follows:

On March 17, 2002, Dennison started drinking vodka and orange juice early in the morning. At some point later in the day, Bradley Swabb phoned to say he planned on stopping by to visit with Dennison and Patricia Stahl, Dennison's live-in girlfriend, at their mobile home in Muncie, Indiana. By the time Swabb arrived at around 7:00 p.m. that evening, Dennison had consumed approximately one half-gallon of vodka.

Dennison, Stahl, and Swabb conversed for a bit in the living room. Dennison then retrieved his new handgun to show Swabb and began twirling it around his finger and pointing it. Meanwhile, Stahl went into the kitchen to fix Dennison another drink. Stahl heard the gun go off, looked up, and saw Dennison pointing the gun in Swabb's direction. Swabb had been shot in the head. Dennison then stated, 'Oh, F---, I've shot Brad,' followed by, 'F--- you, Brad." Stahl rushed into the living room, attempted to check Swabb for a pulse, and then reached for the telephone to call the police. Dennison questioned Stahl about her actions, and when she replied that she was calling the police, Dennison grabbed Stahl by the hair, pointed the gun just underneath her jaw, and then threatened to kill Stahl and her son if she told anyone about what had just happened. Because Stahl's clothing became soiled with blood as she was attempting to render assistance to Swabb, Dennison instructed Stahl to remove her clothes, give them to him, and then go to bed. Stahl complied with Dennison's instructions.

Later that night, Dennison woke Stahl and told her that he needed her to drive. When Stahl walked into the living room, she noticed that Swabb's body and the recliner Swabb was sitting in when he was shot were gone and that the carpet in the vicinity of where the recliner once had been was removed as well. Dennison and Stahl proceeded out to the mobile home park's maintenance truck and drove away. Dennison directed Stahl where to go and made her stop the truck two times. Each time Stahl stopped the truck, Dennison would get out, open the tailgate, remove something, and then close the tailgate. Dennison then ordered Stahl to drive to the car wash where he washed the truck, including the truck bed.

Subsequently, the police recovered Swabb's body in an alley. The police were able to identify the body as being Swabb's based on identification that was found in the back pocket of the pants Swabb was wearing. At a second location, they found the recliner in which Swabb was sitting when he was shot. The investigation conducted by the police led them to suspect Dennison was involved in Swabb's death. Consequently, they went to his home to question him and Stahl. Before the police were able to question Stahl,

Dennison reiterated his threat to her not to tell anyone about what transpired the night before with Swabb. Out of fear, Stahl initially did not reveal to the police that Dennison shot Swabb. When questioned by the police regarding whether he had seen Swabb the night before, Dennison told the police that he had not seen Swabb in a couple of months.

Upon further investigation, the police discovered blood on the concrete slab and steps outside of Dennison's home, on the home's floor and ceiling, and on a cooler and ashtray in the living room. Additionally, when the police examined the mobile home park's maintenance truck, they found traces of blood on its tailgate and in the truck's cab on the passenger's side. The police also located bloody clothing and floor tiles in Dennison's shed.

The State charged Dennison with Murder, a felony, Reckless Homicide, a Class C felony, and Obstruction of Justice, a Class D felony. At his jury trial, Dennison testified that he had very little recollection of the night he shot Swabb. He did, however, recall hearing the gun go off, seeing the gun in his hand, Stahl yelling from the kitchen, 'Oh, you shot Brad,' and then throwing the gun to the floor. He also testified that he remembered Stahl driving the truck. A firearms expert testified that the gun that Dennison used to shoot Swabb was equipped with multiple safety mechanisms that would prevent the gun from discharging accidentally. Further, the expert testified, 'The only way that I could get the firearm to discharge was to disengage the thumb safety, engage the grip safety, and pull the trigger.'

DE 8-5 at 3-6 (citations and footnotes omitted).

In evaluating a legal determination made by a State court, the:

AEDPA provides that, when a habeas petitioner's claim has been adjudicated on the merits in state-court proceedings, a federal court may not grant relief unless the state court's adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A state-court decision is contrary to this Court's clearly established precedents if it applies a rule that contradicts the governing law set forth in our cases, or if it confronts a set of facts that is materially indistinguishable from a decision of this Court but reaches a different result. A state-court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner.

*Brown v. Payton*, 544 U.S. 133, 141 (2005) (citations omitted).

> For purposes of 28 U.S.C. § 2254(d)(1), clearly established law as determined by this Court refers to the holdings, as opposed to the dicta, of this Court's decisions as of the time of the relevant state-court decision. We look for the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision.

*Yarborough v. Alvarado*, 541 U.S. 652, 660-661 (2004) (quotation marks and citations omitted). Furthermore, the United States Supreme Court has made clear that district courts should not independently decide the merits of the petitioner's legal arguments.

> As we have explained, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied a [United States] Supreme Court case incorrectly. Rather it is the habeas applicant's burden to show that the state court applied [that case] to the facts of his case in an objectively unreasonable manner.

*Price v. Vincent*, 538 U.S. 634, 641 (2003) (quotation marks, citations and brackets omitted).

In all four grounds of his habeas petition, Dennison asserts that his counsel was ineffective. In ground one he also asserts that the warrantless entry of his home violated the Fourth Amendment; in ground two he asserts a Fourth Amendment challenge to the admission of evidence obtained in a search of his residence; in ground three he asserts that the prosecutor "reneged" on a guilty plea offer; and in ground four he discusses allegedly undisclosed evidence that undermined the reliability of the state's witnesses.

## I. STATE CONSTITUTIONAL CLAIMS

In addition to asserting that his conviction violates provisions of the United States Constitution, the Petitioner also asserts that it violates Article 1 §§ 11, 12, 13, and 23 of Indiana's Constitution (DE 1 at 3, 5, 9, and 11). But Dennison's argument that he is entitled

to habeas relief based on violations of Indiana's constitution is not cognizable in this proceeding because federal habeas corpus does not reach errors of state law. *Johnson v. Bett*, 349 F.3d 1030, 1037 (7th Cir. 2003).

In conducting habeas review, "a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* (citing *Estelle v. McGuire*, 502 U.S. 62, 68 (1991)). Federal courts "may not grant habeas relief under 28 U.S.C. § 2254 merely because a state court has misinterpreted or misapplied state law." *Lopez v. Thurmer*, 594 F.3d 584, 587 (7th Cir. 2010).

## II. INEFFECTIVENESS OF COUNSEL CLAIM

In all four grounds of his petition for writ of habeas corpus, Dennison asserts that his trial counsel rendered ineffective assistance by not investigating the facts of the case, by not challenging the actions of the officers who searched his home based on the consent of his live-in girl friend, and by not challenging the admissibility of evidence (DE 1 at 4-6, 8, 11, ). "The Sixth Amendment entitles criminal defendants to the 'effective assistance of counsel'—that is, representation that does not fall below an objective standard of reasonableness in light of prevailing professional norms." *Bobby v. Van Hook*, ___ U.S.___, 130 S.Ct. 13, 17 (2009). The governing Supreme Court case is *Strickland v. Washington*, 466 U.S. 668 (1984). To establish ineffective assistance of counsel under *Strickland*, Dennison must show that his counsel's performance was deficient and that the deficient performance prejudiced him. The court's review of counsel's performance is "highly deferential," and the petitioner "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Davis v. Lambert*, 388 F.3d

1052, 1059 (7th Cir. 2004). The prejudice prong requires the petitioner to show that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

Dennison raised his ineffective assistance of counsel claims in his petition for post-conviction relief. The Indiana Court of Appeals properly identified the *Strickland* standard as governing the resolution of these claims (DE 8-10 at 7). Accordingly, this court must determine whether its application of *Strickland* was unreasonable. In regard to Dennison's trial counsel, the Indiana Court of Appeals concluded that:

> While it appears that the search of Dennison's trailer based on Stahl's consent — over the express refusal of Dennison — would be an improper search if it occurred today, it did not clearly violate the law in effect at the time. Counsel's representation does not fall below an objective standard of reasonableness for failure to anticipate a change in the law.
>
> Moreover, Dennison testified at trial that the victim was in his trailer on the night in question, that Dennison was holding a gun, that he heard the gun go off, that Stahl told him that he had shot Brad, and that he then threw the gun. Therefore, any evidence recovered during the police search of Dennison and Stahl's trailer was merely cumulative of Dennison's own testimony. Dennison's counsel's decision not to file a motion to suppress that evidence was neither unreasonable nor prejudicial.
>
> As For Dennison's claim that his trial counsel was ineffective in failing to "investigate" the circumstances surrounding the police's search of his trailer and his arrest, such claims are generally without merit.
>
>> With the benefit of hindsight, a defendant can always point to some rock left unturned to argue counsel should have investigated further. The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that it deprived the defendant of a fair trial.
>
> Dennison has failed to show how his counsel's alleged lack of investigation deprived him of a fair trial.

DE 8-10 at 7-8 (citations omitted).

A federal court may grant habeas relief if the state court identifies the correct legal principle from Supreme Court precedent but unreasonably applies that principle to the facts of the petitioner's case. *Wiggins v. Smith*, 539 U.S. at 520. But here the Indiana Court of Appeals reviewed Dennison's claims under the *Strickland* standard, reasonably applied *Strickland* to his allegations, and rejected them. Dennison failed to establish ineffective assistance of trial counsel because he did not establish a reasonable probability that but for trial counsel's alleged errors the result of the proceeding would have been different. Because the Indiana Court of Appeals reasonably applied *Strickland* to Dennison's claims and found them to be unsubstantiated his claims are without merit on habeas review pursuant to 28 U.S.C. § 2254(d).

### III. FOURTH AMENDMENT CLAIMS

In ground one of his petition, Dennison states that his refusal to permit "police officers entry [to his residence] renders the officers' warrantless entry and search unreasonable and invalid" under the Fourth Amendment (DE 1 at 3). In ground two, he asserts that the trial court violated the Fourth Amendment when it "admitted evidence obtained in a warrantless search of Petitioner's residence" (DE 1 at 5).

A petitioner cannot obtain collateral relief on a Fourth Amendment claim unless the state courts deprived him of a full and fair opportunity to litigate the claim. *Stone v. Powell*, 428 U.S. 465, 481-82 (1976); *Hayes v. Battaglia*, 403 F.3d 935, 939 (7th Cir. 2005).

It takes an "egregious error" (80 F.3d at 226) to imply that the state judges

7

> have closed their ears and minds to argument --- and it is the latter circumstance, not the error itself, that would justify relief under *Stone*. Even an "egregious error" thus is not enough to support a writ of habeas corpus (that's what it means to say that the exclusionary rule does not apply on collateral attack); a blunder, no matter how obvious, matters only in conjunction with other circumstances that imply refusal by the state judiciary to take seriously its obligation to adjudicate claims under the fourth amendment.

*Hampton v. Wyant*, 296 F.3d 560, 563-64 (7th Cir. 2002)(citing *Turentine v. Miller*, 80 F.3d 222, 226 (7th Cir. 1996)).

This claim was known and available to the Petitioner on direct appeal, but he did not raise it in his direct appeal. The Indiana Court of Appeals, in addressing Dennison's claim of ineffective assistance of counsel, concluded that Stahl's consent to search the trailer was valid under clearly established federal law at the time of Dennison's trial and on direct appeal. Nothing in the state court record suggests that Dennison was deprived of a full and fair opportunity to challenge the legality of the search of his residence or the admissibility of the evidence obtained during the search, and this freestanding claim is not reviewable in federal habeas proceedings.

## IV. PLEA AGREEMENT

In ground three of his petition, Dennison asserts that the prosecutor "reneged on (his) promise to abate criminal proceedings" on count I if he pled guilty to counts II and III (DE 1 at 7), and that the trial court erred in not enforcing the plea agreement.

Dennison presented this claim to the Indiana courts in his petition for post-conviction relief (DE 8-7 at 20-27). The Indiana Court of Appeals, however, found that

Dennison had waived any argument that the trial court erroneously failed to sentence him in accordance with a plea agreement. Because that claim was fully available for direct appeal, but was not raised at that time, the Court of Appeals expressly found that Dennison waived this issue (DE 8-10 at 11-12).

The procedural default doctrine precludes a federal court from reaching the merits of a habeas petition when either: (1) the claim was presented to the state courts and was denied on the basis of an adequate and independent state law procedural ground; or (2) the claim was not presented to the state courts and it is clear those courts would now find the claim procedurally barred under state law. *Coleman v. Thompson*, 501 U.S. 722, 735 (1991); *Perruquet. v. Briley*, 390 F.3d 505, 514 (7th Cir. 2004). When a habeas petitioner fails to fairly present a claim to the state courts and the opportunity to raise that claim has now passed, the claim is procedurally defaulted. *Boerckel* 526 U.S. 838 at 853-54.

A habeas petitioner can overcome a procedural default by showing both cause for failing to abide by state procedural rules and a resulting prejudice from that failure. *Wainwright v. Sykes*, 433 U.S. 72, 90 (1977); *Wrinkles v. Buss*, 537 F.3d 804, 812 (7th Cir. 2008). Cause sufficient to excuse procedural default is defined as "some objective factor external to the defense" which prevented a petitioner from pursuing his constitutional claim in state court. *Murray v. Carrier*, 477 U.S. 478, 492 (1986).

A petitioner may also overcome a procedural default by establishing that the court's refusal to consider a defaulted claim would result in a fundamental miscarriage of justice. *House v. Bell*, 547 U.S. 518, 536 (2006); *Coleman*, 501 U.S. at 750. Under this narrow exception,

a habeas applicant must establish that "a constitutional violation has resulted in the conviction of one who is actually innocent of the crime." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). A petitioner who asserts actual innocence "must *demonstrate* innocence; the burden is his, not the state's . . . ." *Buie v. McAdory*, 341 F.3d 623, 626-27 (7th Cir. 2003) (emphasis in original). "It is important to note in this regard that 'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998).

In his traverse, Dennison makes a lengthy and detailed argument about his guilty plea claim (DE 13-1 at 15-19). But he does not assert cause and prejudice for his failure to present this claim in his direct appeal, nor does he make an actual innocence argument. Accordingly, the Petitioner does not present any argument that would justify this Court in considering this claim on the merits despite his procedural default.

## V. ALLEGED UNDISCLOSED EVIDENCE CONCERNING THE TRUTHFULNESS OF TESTIMONY

In ground four of his petition, Dennison raises the question of whether his conviction is Constitutionally infirm "because of allegedly undisclosed evidence concerning the truthfulness of the testimony of the State's witnesses" (DE 1 at 9). But the state court record establishes that he did not present this argument to the Indiana state courts as an independent claim either in his direct appeal (DE 8-3 ) or in his petition for post-conviction relief (DE 8-7 and 8-11).

Before considering the merits of a habeas petition, a federal court must ensure that the petitioner has exhausted all available remedies in the state courts. 28 U.S.C. § 2254(b)(1)(A); *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004). The Exhaustion Doctrine requires that a habeas

10

petitioner "fairly present" his federal constitutional claims to the state courts before submitting them to the federal courts. *Verdin v. O'Leary*, 972 F.2d 1467, 1472 (7th Cir. 1992). To fully exhaust his state court remedies, a habeas petitioner must seek discretionary review from the State's highest court where that review is normal, simple, and an established part of the State's appellate review process. *O'Sullivan v. Boerckel* 526 U.S. 838, 846-47 (1999). Failure to exhaust available state court remedies constitutes a procedural default. To avoid a procedural default, a petitioner must have presented his federal claims to the state courts before he seeks federal review. *Id.* at 844.

A habeas petitioner can overcome a procedural default by showing both cause for failing to present his claims to the state courts and prejudice, *Wainwright v. Sykes*, 433 U.S. at, 90, or by establishing that the court's refusal to consider a defaulted claim would result in a fundamental miscarriage of justice. *House v. Bell*, 547 U.S. at 536 . In his traverse, the Petitioner does not suggest an actual innocence argument or assert cause and prejudice. Accordingly, this claim it is now barred by procedural default because his opportunity to present it to the Indiana Court of Appeals has passed. *Perruquet*, 390 F.3d at 514.

## VI. CERTIFICATE OF APPEALABILITY

Pursuant to RULE 11 OF THE RULES GOVERNING SECTION 2254 CASES, the Court must consider whether to grant Dennison a certificate of appealability. To obtain a certificate of appealability, a petitioner must make a substantial showing of the denial of a constitutional right by establishing "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

For the reasons stated in this memorandum, the Court concludes that some of the Petitioner's

claims are barred by procedural default and that his remaining claims are without merit. Nothing in Dennison's submissions suggest, let alone establish, that jurists of reason could debate the correctness of this Court's conclusions or find a reason to encourage Dennison to proceed further. Accordingly, the Court declines to issue Dennison a certificate of appealability.

## VII. CONCLUSION

For the reasons set forth above, the Court DISMISSES the petition for writ of habeas corpus (DE 1), DIRECTS the Clerk to close this case, and DENIES a certificate of appealability.

SO ORDERED on September 16, 2011

                                    s/William C. Lee
                                    William C. Lee, Judge
                                    United States District Court